**SAPOLU LAW OFFICE, LLLC**

CHASID M. SAPOLU
500 Ala Moana Blvd, Ste. 7400
Honolulu, HI. 96813
Phone: (808) 466-1520
Email: chasid@sapoulaw.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| **JARNETT LONO**<br><br>         **Plaintiff,**<br><br>**v.**<br><br>**HAWAI'I PACIFIC UNIVERSITY**<br>         **Defendant.** | **Case No.**<br><br>**COMPLAINT FOR VIOLATIONS OF THE EQUAL PAY ACT AND TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**<br><br>**Jury Trial Demand** |

## <u>PRELIMINARY STATEMENT</u>

1.      This is an action for relief from Defendant's violations of Plaintiff's workplace rights.  Defendant Hawai'i Pacific University ("Defendant" or "HPU") violated both Federal and State equal pay and discrimination laws, and then unlawfully retaliated against Plaintiff Jarnett Lono ("Plaintiff") for asserting her protected rights under these laws.

2.      Plaintiff has been affiliated with HPU for twenty-two years in a coaching capacity with HPU's Women's Softball ("WSB") program.  Plaintiff was herself a student-athlete and product of the program before becoming a

volunteer assistant coach and serving in that capacity for eleven years.  Plaintiff
was then hired by Defendant and worked as a paid assistant coach for six years
before being elevated to share co-head coaching duties.  Then in July of 2020,
after being the co-head coach for three years, Plaintiff was named the sole head
coach of the WSB program.  Plaintiff continues to helm the program as its sole
head coach.

3.      Additionally, Plaintiff is of the information and belief that Defendant
HPU is paying her at a lesser rate than her male predecessor and at a lesser rate
than at least one of her male counterparts for performing substantially similar
work.

## JURISDICTION AND VENUE

4.      Jurisdiction of this action is conferred on this Court by 28 U.S.C.
Section 1331, the Equal Pay Act, 29 U.S.C. Section 206(d) *et seq*. ("EPA"), Section
216(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. Section 201 *et seq*
("FLSA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C Section
2000e *et seq*. ("Title VII").

5.      This Court has supplemental jurisdiction over the related state law
claims pursuant to 28 U.S.C. Section 1367(a) because Plaintiff's claims under
Hawaiʻi's Wage and Hour Law, and Hawaiʻi's Employment Practices Law, including
claims under Hawaiʻi's Whistleblower's Protection Act, form part of the same case
or controversy under Article III of the United States Constitution.  Plaintiff's state
law claims all share common operative facts with her federal law claims, and the
parties are identical.  Resolving all state and federal claims in a single action
serves the interest of judicial economy, convenience, and fairness to the parties.

6.      Pursuant to 28 U.S.C. Section 1391(b), venue is proper in the District
of Hawaiʻi because Plaintiff resides in this District, Defendant resides in and

employs Plaintiff in this District, and the unlawful employment practices alleged herein giving rise to Plaintiff's claims occurred in this District.

7.     The administrative prerequisites for filing this cause of action have been fulfilled.  On January 10, 2022, Plaintiff dual-filed a charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Hawaiʻi Civil Rights Commission ("HCRC") and within one-hundred eighty (180) days of the occurrence of the acts which Plaintiff complained.

8.     On June 14, 2022, Plaintiff received a Notice of Dismissal and Right to Sue from the HCRC with respect to her charge of discrimination.

## NATURE OF THIS ACTION

9.     This is an action brought pursuant to the EPA, Title VII, Hawaiʻi's Employment Practices Laws, Hawaiʻi's Wage and Hour Laws, Hawaiʻi's Whistleblowers' Protection Act, and state common law to obtain relief for Plaintiff.

10.    This action is brought by Plaintiff to secure declaratory relief and damages to remedy Defendant's violations of federal and state employment laws by failing to equally pay Plaintiff compared to similarly situated former and/or current male employees performing equal work on jobs the performance of which require equal skill, effort, and responsibility and which are performed under similar working conditions, and to secure declaratory and other relief to remedy Defendant's commission of unlawful retaliation for Plaintiff's assertion of her protected rights under federal and state employment laws.

## PARTIES

11.    Plaintiff Jarnett Lono is a woman who currently resides in Honolulu, Hawaiʻi.  She has been employed in a coaching capacity with HPU since 2011 and has been at all relevant times a non-exempt employee.  Since July of 2020, Plaintiff became the sole head coach of the WSB program and is responsible for

general oversight of the WSB program at HPU.  Plaintiff is the first female to hold this position at HPU.

12.     Defendant Hawaiʻi Pacific University is a private university organized under the laws of the State of Hawaiʻi, with its principal place of business located in Honolulu, Hawaiʻi.  At all times relevant herein Defendant was Plaintiff's employer covered by the EPA, Title VII, Hawaiʻi's Employment Practices Laws, Hawaiʻi's Wage and Hour Laws, and Hawaiʻi's Whistleblowers' Protection Act.  Defendant is a "person" within the meaning of 42 U.S.C. Section 2000e(a) and an "employer" within the meaning of 42 U.S.C. Section 2000e(b).  Defendant is a "person" within the meaning of 29 U.S.C. Section 203(a) and an "employer" within the meaning of 29 U.S.C. Section 203(d).  At all times relevant hereto, HPU employed more than 15 people including, but not limited to, Plaintiff.

13.     Defendant HPU is the common employer of all current and former employees in the approximately fourteen sports programs within its athletics division, including both male and female head coaches.  As the common employer, HPU manages many aspects of the head coaching positions including hiring and promotions, creating assistant coach positions, setting pay rates and/or salaries ("salary" or "salaries"), allocating scholarship funds for the recruit and retention of student-athletes, providing locations of practices and contests, applicable budget sizes, and other terms and conditions of employment.

**FACTUAL ALLEGATIONS**

14.     In 2011, after serving eleven years as a volunteer assistant coach for the WSB program, Plaintiff was hired by HPU into a paid assistant coaching position.

15.     During her tenure as an assistant coach, Plaintiff worked under two male head coaches; Howard Okita and Bryan Nakasone.

16.     Upon information and belief, Bryan Nakasone was the sole head coach of the WSB program from 2009 to 2017 and earned an approximate salary between $24,133 and $32,000.

17.     Plaintiff remained an assistant coach until 2017 when she was elevated to share co-head coaching duties with Bryan Nakasone.

18.     Upon information and belief, when both Bryan Nakasone and Plaintiff shared co-head coaching duties, Defendant HPU divided the salary of the head coach position equally and paid Bryan Nakasone and Plaintiff a salary of approximately $16,000 each.

19.     In July of 2020, after the retirement of Bryan Nakasone, Plaintiff was named the sole head coach of the WSB program at HPU.  She is the first female to hold this position.

20.     Despite Plaintiff's promotion, she continued to receive the same salary she had received as a co-head coach, approximately $16,000.

21.     Not long after her promotion, Plaintiff made requests to HPU administration to receive pay equal to that of her male predecessor who previously held the WSB sole head coach position.

22.     During the year following her promotion, Plaintiff continued to follow-up with HPU administration on resolving this issue relating to her compensation and equal treatment.  In June and July of 2021, Plaintiff requested internal reviews by HPU to compare her salary to the salaries of her male predecessors, as well as the salaries of her male counterparts in other sports. Plaintiff sought to ensure equality of pay across all athletic programs at HPU.

23.     In August of 2021, Plaintiff was notified that after review, HPU had decided to adjust her salary to approximately $22,803.

24.     Upon information and belief, there remains a disparity between Plaintiff's current salary and that of her male predecessor.

25.      Upon information and belief, there also remains a disparity between Plaintiff's current salary and the salary of other male head coaches in other athletic programs.

26.      Upon information and belief, the male head coach of the volleyball team receives a salary between $35,000 and $40,000; the male head coach of the baseball team receives a salary between $50,000 and $60,000; and the male head coach of the men's volleyball team receives a salary between $75,000 and $90,000; these salaries do not include the value of other benefits which these male head coaches receive as terms, conditions, and privileges of their employment.

**A.      Plaintiff is Required to Perform the Same Job Duties that Require Equal Skill, Effort and Responsibility Performed under Similar Working Conditions as her male predecessor.**

27.      Upon information and belief, HPU has a policy and/or practice of discriminating against Plaintiff based on her gender by treating her less favorably than her male predecessor with regard to pay and other terms and conditions of employment despite HPU requiring Plaintiff to perform the same job duties that require equal skill, effort and responsibilities performed under similar working conditions as her male predecessor.

28.      HPU has and continues to require that the WSB head coach carry out job duties which include having general oversight of the WSB program and reporting directly to the Executive Director of Athletics ("AD").  In addition, HPU has and continues to require that the WSB head coach carry out other job duties which generally fall under two categories – team development and administration.

29.      As it relates to team development, HPU has and continues to require that the WSB head coach provide and manage on-field instruction and training for

student-athletes during practices and competition hours; develop the skills of student-athletes; be able to work nights and weekends; travel as necessary for competitive games; ensure quality routines for the season; oversee assistant and volunteer coaches; ensure that all student-athletes adhere to all HPU and code of conduct rules; and practice acceptable standards of safety in accordance with the Pacific West athletic Conference ("PacWest") guidelines and National Collegiate Athletic Association ("NCAA") rules.

30.     As it relates to administrative duties, HPU has and continues to require that the WSB head coach manage the operational budget of the WSB program; coordinate and implement game and practice schedules; manage the scholarship allotment plan; monitor the academic progress of student-athletes; coordinate travel arrangements; coordinate and implement fundraisers in cooperation with the AD and HPU's University Relations division; purchase uniforms and equipment; secure umpires for contests; coordinate community engagement and service projects; review paid assistant timesheets; manage the recruitment and retention of student-athletes; manage the WSB program's inventory, storage and office; and ensure compliance with administrative requirements under rules and regulations of HPU, the PacWest, and the NCAA.

31.     In addition, HPU has and continues to require that the WSB head coach keep and maintain the facilities used by the WSB program and ensure they are maintained according to NCAA standards and specifications.

32.     During the tenure of Plaintiff's male predecessor Bryan Nakasone as sole head coach, Plaintiff had served as an assistant coach and carried out much of the administrative duties required of the WSB head coach.  As a result, in her current role as the sole head coach, Plaintiff spends more time carrying out these administrative duties, among other duties and responsibilities, then her male predecessor had done during his time as the sole head coach.

33.     Despite the equal work required of Plaintiff and her male predecessor, and the fact that Plaintiff is qualified and carries out these duties in accordance with HPU's requirements, HPU, nevertheless, has paid and continues to pay Plaintiff less than her similarly situated male predecessor.

**B.      Plaintiff is Required to Perform the Same Job Duties that Require Equal Skill, Effort and Responsibilities Performed under Similar Working Conditions as Her Male Comparators.**

34.     Upon information and belief, Defendant HPU has and continues to have a policy and/or practice of discriminating against Plaintiff based upon her gender by treating her less favorably than her male counterparts with regard to pay and other terms and conditions of employment despite HPU requiring Plaintiff to perform the same job duties that require equal skill, effort and responsibilities performed under similar working conditions as her male counterparts who are head coaches of other sports, including the head coach of the volleyball program, the head coach of the baseball program, and the head coach of the men's basketball program (collectively "male comparators").

35.     As their common employer, HPU, for example, has and continues to require that Plaintiff and her male comparators provide general oversight to their respective athletic programs; report directly to the AD; provide and manage instruction and training for student-athletes during practices and competition hours; develop the skills of student-athletes; be able to work nights and weekends; ensure quality routines for the season; oversee assistant and volunteer coaches; and ensure that all student-athletes adhere to all HPU and code of conduct rules.

36.     As their common employer, HPU also has and continues to require that Plaintiff and her male comparators manage operational budgets for their respective athletic programs; coordinate and implement game and practice

schedules; manage scholarship allotment plans; monitor the academic progress of student-athletes; coordinate travel arrangements; coordinate and implement fundraisers in cooperation with the AD and HPU's University Relations Division; purchase uniforms and equipment; secure game officials for contests; coordinate community engagement and service projects; review paid assistants' timesheets; manage recruitment and retention of student-athletes;  and manage the inventory, storage, and office of their respective athletic programs.

37.     As their common employer, HPU also has and continues to require Plaintiff and the male comparators to travel nationally as necessary for competitive games and to coach in various playing conditions throughout the United States.  Plaintiff and her male comparators do not work in a single location but are required to perform and work at practices in locations around the island of O'ahu, as well as contests locally and abroad.

38.     Plaintiff and similarly situated male comparators must adhere to the rules and regulations under the PacWest conference and the NCAA; additionally, the WSB program, as well as the respective athletic programs of the male comparators, all qualify and are treated as "team sports" under NCAA regulations.

39.     Due to NCAA regulations regarding minimum and maximum contests allotted during any given regular season, the WSB program typically has more games than the athletic programs of the male comparators.  For example, regulations allow softball programs to have up to 56 contests, whereas baseball has a maximum of 50 and both the volleyball program and the men's basketball program have a maximum of 26.  In light of this, Plaintiff typically spends more time in contests, among other duties and responsibilities, than similarly situated male comparators.

40.     Moreover, upon information and belief, in the past three seasons, the WSB program played approximately *twelve* more games than the baseball

program, approximately *thirty* more games than the volleyball program, and approximately *thirty* more games than the men's basketball program over that same period of time.

41.     Furthermore, HPU has and continues to require that Plaintiff and her male comparators ensure the facilities used by their respective athletic programs are used, kept, and maintained according to NCAA standards and specifications. Almost since its inception, the WSB program has utilized the Howard A. Okita softball field located at HPU's Hawai'i Loa campus in Kaneohe ("HAO field").  The HAO field is maintained entirely by the WSB program with the help of volunteers and donated materials and equipment.  In contrast, the athletic programs of the male comparators utilize outside facilities for contests and practices.  In light of the needs relating to the HAO field, Plaintiff typically spends more time ensuring the proper maintenance of facilities, among other duties and responsibilities, than similarly situated male comparators.

42.     Defendant HPU, nevertheless, has paid and continues to pay Plaintiff less than her similarly situated male comparators.

**C.      Defendant HPU Has a Policy and/or Practice of Discriminating Against Plaintiff, on the Basis of Gender, by Paying Plaintiff Less Than Similarly Situated Male Predecessors and Similarly Situated Male Comparators.**

43.     After her promotion to sole head coach of the WSB program, Plaintiff made several requests to HPU to receive equal pay to that of her male predecessors and male comparators; she also demanded a salary study to determine equality relating to the compensation and benefits packages that were given to the coaches.

44.     These requests, however, have been rejected.  HPU has consistently hidden behind their own classifications of positions as "full-time" and "part-time"

to justify disparate pay without reviewing the actual job contents of each position and determining whether the job duties between the head coaches – both current and/or former – required equal skill, effort and responsibilities while being performed under similar working conditions.  Thus, HPU has paid and continues to pay Plaintiff less for comparable work than her male predecessors and/or male comparators.

45.     Defendant HPU continues its policy and/or practice of paying Plaintiff less than similarly situated male predecessors and/or male counterparts.

46.     Defendant HPU has no legitimate, non-discriminatory reason for this disparity in pay, nor can it be explained away by any bona fide seniority, merit or incentive system or any other factor other than sex.

**D.     Defendant HPU Has a Policy and/or Practice of Discriminating Against Plaintiff, on the Basis of Gender, by Providing Plaintiff Less Favorable Terms and Conditions of Employment Than Similarly Situated Male Comparators.**

47.     Defendant HPU's ongoing policy and/or practice of intentional gender discrimination extend beyond pay and into other aspects of Plaintiff's work conditions.  This includes, but is not limited to, the conditions relating to the upkeep and maintenance of facilities, and the allocation of scholarships impacting the recruit and retention of student-athletes.

48.     For example, HPU has control over payments to outside parties relating to the maintenance and upkeep of facilities.  The WSB program maintains and upkeeps the HAO field on their own without monetary assistance from HPU.  Meanwhile, HPU pays to rent out the practice and game facilities for the athletic programs of the male comparators.   And since the WSB program first began using HAO field, HPU has never offered to pay for maintenance at the HAO field in the

same manner it does for the facilities used by the athletic programs of the male comparators.

49.      Additionally, HPU has control over the allocation and allotment of scholarship funds to individual athletic programs.  Over the past years, the WSB program has had their number of scholarships slashed by more than half, meanwhile HPU has allowed the athletic program(s) of the male comparators, particularly the men's basketball program, to retain an unfairly high number of scholarships.

50.      Defendant HPU has no legitimate, non-discriminatory reason for the disparity in the terms and conditions of employment to which it has subjected and continues to subject Plaintiff.

**E.      Defendant HPU Retaliated Against Plaintiff in the Compensation, Terms, Conditions, and/or Privileges of Her Employment After She Opposed and Reported Violations of Federal and/or State Law.**

51.      During the year following her promotion to sole WSB head coach, Plaintiff continued to follow-up with Defendant HPU concerning her demand for equal pay; and in June and July of 2021, Plaintiff requested that HPU carry out an internal review of the salary schedules within their athletics department, signaling her opposition to their unfair practices and her belief that HPU was in violation of federal and state laws requiring equality in pay.

52.      Beginning in late July of 2021, Plaintiff noticed unusual, unnecessary, and unfair scrutiny being placed on her and the WSB program by Defendant HPU.

53.      For example, Plaintiff organized a day of maintenance and upkeep at the HAO field scheduled for July 31, 2021.

54.      This is not the first time such an event had been organized, in fact Plaintiff regularly organized such events to provide the general upkeep and maintenance at the HAO field.

55.     In advance of the event, Plaintiff notified HPU's maintenance department of the work which would involve Plaintiff, Plaintiff's staff and volunteers which Plaintiff had recruited to help out.  Plaintiff also requested the use of a ladder and a golf cart.

56.     HPU's maintenance department readily approved Plaintiff's request and made no issue of the work Plaintiff had organized.

57.     Not long after HPU's maintenance department gave their approval, HPU administration emailed Plaintiff raising several concerns that had never been raised before as it related to these events.  The AD inquired and insisted that all volunteers be cleared for the event with background checks and screening.  The AD also insisted that none of the volunteers be allowed to use the ladder and golf cart which HPU's maintenance had already approved for their use.

58.     HPU administration also raised questions relating to pieces of equipment that had been donated to the WSB program.  Specifically, HPU administration requested documentation for all donated equipment.

59.     None of these issues had ever been raised in previous instances where volunteers were recruited by Plaintiff to assist in the maintenance and upkeep of the HAO field.

60.     As a result of the irregular scrutiny being placed on Plaintiff and the WSB program, the planned HAO field maintenance event had to be cancelled.

61.     Also occurring in late July of 2021, Plaintiff was required to list out her work hours within the past year and provide HPU with a breakdown of the usage of those hours.

62.     Upon information and belief, no other coach – including male comparators and male predecessors – had been required to undergo this kind of scrutiny in order to receive just compensation.  Only when Plaintiff spoke out about the need for equal treatment did HPU require her to prove her value.

63.     In January of 2022, after HPU rejected her requests for equal pay, Plaintiff timely filed a charge of discrimination with the EEOC.  The basis of the charge related to Plaintiff's belief that she had been denied equal pay for equal work and that HPU was in violation of Title VII and the Equal Pay Act.

64.     In May of 2022, HPU submitted a position statement in response to Plaintiff's EEOC charge.  Amongst other things, HPU claimed that the disparate pay was due to Plaintiff's "part-time" classification.

65.     In June of 2022, Plaintiff underwent an annual performance review.

66.     The review utilized twelve categories ranging from "Job Knowledge" to "Quality of Work."  The evaluation was completed by the AD who rated and commented under each category.  Of the twelve categories in the review, nine contained unfavorable ratings citing issues with Plaintiff's "part-time" classification.

67.     Prior to this evaluation, there had been zero complaints against Plaintiff based on her work or performance.  There had never been an issue with Plaintiff's "part-time" classification.  In fact, from its inception, the majority of head coaches for the WSB program had worked in a "part-time" capacity.  But this evaluation – conducted not long after Plaintiff filed her EEOC complaint, and within two months of HPU submitting its rebuttal to Plaintiff's complaint – suddenly found that three-quarters of Plaintiff's job was now negatively impacted by her "part-time" classification.

68.     Even more troubling is that towards the end of the evaluation, HPU's AD signaled her intent to "transition to a full time coach for softball."

69.     After years of "part-time" head coaches for the WSB program and years of zero complaints relating to this "part-time" classification, HPU suddenly wants to "transition" Plaintiff out of her current position.

70.     This is an unabashed threat issued to Plaintiff, in retaliation for her opposition to HPU's policy and/or practice of unequal pay and Plaintiff's filing of the EEOC complaint charging HPU with violations of Title VII and the Equal Pay Act.

**CAUSES OF ACTION**

**COUNT I**

**Equal Pay Act**

**(The Fair Labor Standards Act of 1938, as amended by the Equal Pay Act, 29 U.S.C. §§ 206 *et seq*.)**

71.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

72.     Defendant HPU has discriminated against Plaintiff in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206 *et seq*., as amended by the Equal Pay Act of 1963.

73.     Defendant HPU has paid Plaintiff less than similarly situated former and/or current male employees performing equal work on jobs the performance of which require equal skill, effort, and responsibility and which are performed under similar working conditions.

74.     The differential in pay between Plaintiff and similarly situated former and/or current male employees is not due to any bona fide seniority, merit or incentive system or any other factor other than sex, but was because of gender.

75.     Defendant HPU did not act in good faith and created and perpetuated gender-based wage discrimination in violation of the EPA.

76.     The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C § 255(a).  The three-year statute of limitations applies to HPU's EPA violations because HPU's EPA violations were and are willful.

77.     As a result of HPU's gender-based discriminatory policies and/or practices as described above, Plaintiff has suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

78.     As a further result of HPU's gender-based discriminatory policies and/or practices as described above, Plaintiff has necessarily retained an attorney to prosecute this action.  Plaintiff is therefore entitled to an award of reasonable attorney's fees and litigation expenses incurred in bringing this lawsuit.

79.     Plaintiff requests relief as hereinafter described.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a.  For a declaration that Defendant's actions were unlawful;

b.  For equitable relief, including without limitation, back pay (including interest and benefits);

c.  For liquidated damages;

d.  For pre-judgement and post-judgment interest;

e.  For attorney's fees and costs to the fullest extent allowed by law; and

f.  For such other relief as the Court deems just, necessary, and proper.

## COUNT II

### Title VII of the Civil Rights Act of 1964, as amended
### (42 U.S.C. §§ 2000e, *et seq*.)

80.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

81.     The conduct described herein violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

82.     Defendant HPU has and continues to intentionally discriminate against Plaintiff on the basis of gender by maintaining a policy and/or practice of

treating her less favorably than similarly situated former and/or current male employees with respect to, among other things, pay and other terms, conditions, and privileges of employment.

83.     Defendant HPU's discriminatory practices described above has denied Plaintiff compensation and other benefits of employment to which she is entitled, which has resulted in the loss of past and future wages and other job benefits and has caused Plaintiff to suffer emotional distress.

84.     Defendant HPU acted or failed to act as herein alleged with willfulness, malice, and/or reckless indifference to Plaintiff's protected rights. Plaintiff is thus entitled to punitive damages.

85.     As a further result of HPU's gender-based discriminatory policies and/or practices as described above, Plaintiff has necessarily retained an attorney to prosecute this action.  Plaintiff is therefore entitled to an award of reasonable attorney's fees and litigation expenses incurred in bringing this lawsuit.

86.     Plaintiff requests relief as hereinafter described.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a.  For a declaratory judgment that the practices complained of in this Complaint are unlawful and violate 42 U.S.C. SECTION 2000e, *et seq*;

b.  For equitable relief, including without limitation, back pay, front pay and job benefits that Plaintiff would have received but for the discriminatory practices of Defendant;

c.  For an adjustment of the wage rate and benefit for Plaintiff to the level that Plaintiff would be enjoying but for HPU's discriminatory practices;

d.  For compensatory damages in an amount to be proven at trial;

e.  For special damages as will be proven at trial;

    f.   For general damages as will be proven at trial;

    g.   For punitive and exemplary damages in an amount to be proven at trial, commensurate with HPU's ability to pay and to deter future discriminatory conduct;

    h.   For pre-judgment and post-judgment interest;

    i.   For attorney's fees, costs of suit and litigation expenses; and

    j.   Such other relief as the Court deems just, necessary and proper.

## COUNT III

**Hawaiʻi Wage and Hour Laws; Wage Discrimination Prohibited**

**(Hawaiʻi Revised Statutes § 387-4)**

87.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

88.    Defendant HPU has discriminated against Plaintiff in violation of Hawaiʻi's Wage Discrimination Prohibition, Haw. Rev. Stat. § 387-4.

89.    Defendant HPU has and continues to pay Plaintiff less than similarly situated former and/or current male employees performing equal work on jobs the performance of which require equal skill, effort, and responsibility and which are performed under similar working conditions.

90.    The differential in pay is not due to any bona fide seniority, merit or incentive system or any other factor other than sex but was because of gender.

91.    As a result of HPU's gender-based discriminatory policies and/or practices as described above, Plaintiff has suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

92.    As a further result of HPU's gender-based discriminatory policies and/or practices as described above, Plaintiff has necessarily retained an attorney

to prosecute this action.  Plaintiff is therefore entitled to an award of reasonable attorney's fees and litigation expenses incurred in bringing this lawsuit.

93.      Plaintiff requests relief as hereinafter described.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

      a. For a declaration that Defendant's actions were unlawful;

      b. For equitable relief, including without limitation, back pay (including interest and benefits);

      c. For pre-judgement and post-judgment interest;

      d. For attorney's fees and costs to the fullest extent allowed by law; and

      e. For such other relief as the Court deems just, necessary, and proper.

## COUNT IV

### Hawaiʻi Employment Practices Law

### (Hawaiʻi Revised Statutes § 378-2.3; Equal Pay; sex discrimination)

94.      Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

95.      Defendant HPU has discriminated against Plaintiff in violation of Hawaiʻi's Employment Practices Law – Equal Pay, Haw. Rev. Stat. § 378-2.3.

96.      Defendant HPU has paid and continues to pay Plaintiff at a rate less than similarly situated former and/or current male employees performing equal work on jobs the performance of which require equal skill, effort, and responsibility and which are performed under similar working conditions.

97.      The differential in pay between Plaintiff and similarly situated former and/or current male employees is not due to any bona fide seniority, merit or incentive system or any other factor other than sex but was because of gender.

98.     Defendant HPU did not act in good faith and created and perpetuated gender-based wage discrimination in violation of Hawaiʻi law.

99.     Defendant HPU acted or failed to act as herein alleged with malice or reckless indifference to Plaintiff's protected rights.  Plaintiff is thus entitled to punitive damages.

100.    The foregoing conduct constitutes a willful violation.

101.    Defendant HPU's discriminatory practices described above has denied Plaintiff compensation and other benefits of employment to which she is entitled, which has resulted in the loss of past and future wages and other job benefits and has caused Plaintiff to suffer emotional distress.

102.    As a further result of HPU's gender-based discriminatory policies and/or practices as described above, Plaintiff has necessarily retained an attorney to prosecute this action.  Plaintiff is therefore entitled to an award of reasonable attorney's fees and litigation expenses incurred in bringing this lawsuit.

103.    Plaintiff requests relief as hereinafter described.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a. For a declaratory judgment that the practices complained of in this Complaint are unlawful and violate Haw. Rev. Stat. § 378-2.3;

b. For equitable relief, including without limitation, back pay, front pay and job benefits that Plaintiff would have received but for the discriminatory practices of Defendant;

c. For an adjustment of the wage rate and benefit for Plaintiff to the level that Plaintiff would be enjoying but for HPU's discriminatory practices;

d. For compensatory damages in an amount to be proven at trial;

e. For special damages as will be proven at trial;

f.  For general damages as will be proven at trial;

g.  For punitive and exemplary damages in an amount to be proven at trial, commensurate with HPU's ability to pay and to deter future discriminatory conduct;

h.  For pre-judgment and post-judgment interest;

i.  For attorney's fees, costs of suit and litigation expenses; and

j.  Such other relief as the Court deems just, necessary and proper.

## COUNT V

### Hawaiʻi Employment Practices Law

### (Hawaiʻi Revised Statutes § 378-2; Discriminatory practices made unlawful)

104.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

105.    The conduct described herein violates Hawaiʻi's Employment Practices Law – Prohibition on Discriminatory Practices, Haw. Rev. Stat. § 378-2.

106.    Defendant HPU has and continues to intentionally discriminate against Plaintiff on the basis of gender by maintaining a policy and practice of treating her less favorably than similarly situated former and/or current male employees with respect to compensation and/or other terms, conditions, and/or privileges of employment.

107.    Defendant HPU's discriminatory practices described above has denied Plaintiff compensation and other benefits of employment to which she is entitled, which has resulted in the loss of past and future wages and other job benefits and has caused Plaintiff to suffer emotional distress.

108.     Defendant HPU acted or failed to act as herein alleged with willfulness, malice, and/or reckless indifference to Plaintiff's protected rights. Plaintiff is thus entitled to punitive damages.

109.     As a further result of HPU's gender-based discriminatory policies and/or practices as described above, Plaintiff has necessarily retained an attorney to prosecute this action.  Plaintiff is therefore entitled to an award of reasonable attorney's fees and litigation expenses incurred in bringing this lawsuit.

110.     Plaintiff requests relief as hereinafter described.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

   a.  For a declaratory judgment that the practices complained of in this Complaint are unlawful and violate Haw. Rev. Stat. § 378-2;

   b.  For equitable relief, including without limitation, back pay, front pay and job benefits that Plaintiff would have received but for the discriminatory practices of Defendant;

   c.  For an adjustment of the wage rate and benefit for Plaintiff to the level that Plaintiff would be enjoying but for HPU's discriminatory practices;

   d.  For compensatory damages in an amount to be proven at trial;

   e.  For special damages as will be proven at trial;

   f.  For general damages as will be proven at trial;

   g.  For punitive and exemplary damages in an amount to be proven at trial, commensurate with HPU's ability to pay and to deter future discriminatory conduct;

   h.  For pre-judgment and post-judgment interest;

   i.  For attorney's fees, costs of suit and litigation expenses; and

   j.  Such other relief as the Court deems just, necessary and proper.

## COUNT VI

### Equal Pay Act; Retaliation

### (29 U.S.C. § 215(a)(3); Discriminatory practices made unlawful)

111.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

112.    Defendant HPU has unlawfully retaliated against Plaintiff in violation of 29 U.S.C. § 215(a)(3).

113.    Defendant HPU retaliated against Plaintiff by discriminating against her in the terms, conditions, and/or privileges of her employment because Plaintiff instituted proceedings with the EEOC by filing a complaint which charged HPU with violating, amongst other things, the Equal Pay Act.

114.    As a further result of HPU's retaliatory conduct as described above, Plaintiff has necessarily retained an attorney to prosecute this action.  Plaintiff is therefore entitled to an award of reasonable attorney's fees and litigation expenses incurred in bringing this lawsuit.

115.    Plaintiff requests relief as hereinafter described.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

      a.  For a declaration that Defendant's actions were unlawful;

      b.  For attorney's fees and costs to the fullest extent allowed by law; and

      c.  For such other relief as the Court deems just, necessary, and proper.

### COUNT VII

### Hawaiʻi's Whistleblowers' Protection Act

### (Haw. Rev. Stat. §§ 378-61 *et seq.*)

116.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth herein.

117.     Defendant HPU has unlawfully retaliated against Plaintiff in violation of Haw. Rev. Stat. § 378-62.

118.     Plaintiff engaged in a legally protected activity by doing one or all of the following:

   a. Opposing Defendant HPU's policy and/or practice of unequal pay based on her good faith belief that it was unlawful and/or unlawfully discriminatory; and/or,

   b. Reporting to Defendant HPU what she believed was an unlawful and/or unlawfully discriminatory practice; and/or

   c. Reporting to the EEOC what she believed was a violation of Title VII and/or the Equal Pay Act.

119.     Defendant HPU retaliated against Plaintiff by doing one or all of the following:

   a.  threatening Plaintiff with regards to her compensation, terms, conditions and/or privileges of employment; and/or

   b. discriminating against Plaintiff regarding her compensation, terms, conditions and/or privileges of employment

120.     Defendant's retaliatory action(s) are reasonably likely to deter employees from engaging in protected activity.

121.     As a result of HPU's retaliatory conduct described above, Plaintiff has necessarily retained an attorney to prosecute this action.  Plaintiff is therefore entitled to an award of reasonable attorney's fees and litigation expenses incurred in bringing this lawsuit.

122.     Plaintiff requests relief as hereinafter described.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

      a.  For a declaration that Defendant's actions were unlawful;

      b.  For a fine against Defendant in the amount of $7,500 to be deposited with the State director of finance to the credit of the general fund of the State of Hawai'i pursuant to Haw. Rev. Stat. § 378-65;

      c.  For attorney's fees and costs to the fullest extent allowed by law; and

      d.  For such other relief as the Court deems just, necessary, and proper.

Dated: September 1, 2022                  Respectfully submitted,

                                          /s/ CHASID M. SAPOLU
                                    By: CHASID M. SAPOLU
                                    Attorney for Plaintiff

**JURY TRIAL DEMAND**

      Plaintiff hereby demands a jury trial as provided by Rule 38 of the Federal Rules of Civil Procedure.

Dated: September 1, 2022                  Respectfully submitted,

                                          /s/ CHASID M. SAPOLU
                                    By: CHASID M. SAPOLU
                                    Attorney for Plaintiff